IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ABDINASIR FARAH, an individual,<br><br>Respondent,<br><br>v.<br><br>SEATTLE CHILDREN'S HOSPITAL, a Washington corporation; AMY TAYNTOR, an individual,<br><br>Appellants. | No. 88366-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BUI, J. — In this case we are asked to determine whether a negligent training and supervision claim may be brought against an employer, whose employee was immune from liability when, acting within the scope of their employment, the employee made a good faith reporting of possible child abuse. We answer in the negative.

FACTS

On February 10, 2022, Abdinasir Farah took his eight-year-old autistic daughter, R.F., to Seattle Children's Hospital (SCH) for complaints about her urinary tract. A doctor and Amy Tayntor, a medical assistant, saw R.F. and they asked Farah to assist with the examination including undressing R.F. and obtaining a urine sample. The doctor and Tayntor left the examination room. When Tayntor returned, she claimed, "she saw [Farah] touching R.F.'s 'private area' and 'doing circular motions in like her clitoris area.' "

Tayntor reported Farah's suspected sexual abuse to Child Protective

1

Services (CPS). The next day, Farah was arrested, booked, and charged with communicating with a minor for immoral purposes. The arrest was "apparently on the strength of Ms. Tayntor's report to CPS." On April 7, CPS determined there was insufficient evidence to conclude the alleged child abuse had occurred. Thereafter, Farah was released from jail.

On October 4, 2024, Farah filed various claims against Tayntor and SCH. Farah filed a negligence claim against Tayntor, alleging Tayntor was negligent "in reaching the opinion that Farah had touched his daughter inappropriately." For this claim, Farah contends SCH was vicariously liable for Tayntor's negligent conduct in the course of her employment.

Farah also filed a direct claim against SCH, alleging that SCH was negligent in the "training of employees in the areas of child abuse reporting, cultural awareness, and patient/parent interactions." Farah's ethnicity is Somalian.

Tayntor and SCH moved to dismiss the negligence claims under CR 12(b)(6). The court dismissed Farah's claims against Tayntor, because Tayntor's reporting fell within First Amendment protected activity of petitioning the government, and her reporting of possible child abuse "falls squarely within the ambit of the statutory grant of immunity" under RCW 26.44.060. The court also dismissed claims against SCH arising out of Tayntor's good faith investigation and reporting, under a theory of vicarious liability.

The court denied dismissing a direct claim against SCH alleging negligent training and supervision of Tayntor as their employee.

2

On May 30, 2025, the court denied SCH's motion to reconsider but granted its motion insofar as SCH's motion, without objection from Farah, sought to certify the following question for interlocutory review: "[w]hether a plaintiff may maintain a negligent training and supervision claim against an employer when (1) the employee acted within the scope of employment, and (2) the employee is absolutely immune from liability under RCW 26.44.060 for making a good faith report."

The court found the question " ' involve[d] a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review . . . may materially advance the ultimate termination of litigation.' " (quoting RAP 2.3(b)(4)).

On July 24, 2025, a commissioner of this court granted discretionary review.

ANALYSIS

"CR 12(b)(6) provides for dismissal of a complaint if it fails to state a claim upon which relief can be granted." Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 717, 189 P.3d 168 (2008). For a CR 12(b)(6) motion, "[a]ll facts alleged in the plaintiff's complaint are presumed true." Rodriguez, 144 Wn. App. at 717. A motion to dismiss should be granted only "if it appears beyond a reasonable doubt that no facts exist that would justify recovery." Cutler v. Phillips Petroleum Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994).

"We review CR 12(b)(6) rulings de novo." Atchison v. Great W. Malting Co., 161 Wn.2d 372, 376, 166 P.3d 662 (2007). We review certified questions of

law de novo. Rowe v. Klein, 2 Wn. App. 2d 326, 332, 409 P.3d 1152 (2018).

In this case, the negligent reporting claim against Tayntor was dismissed because she was immune under RCW 26.44.060 in making a good faith reporting of suspected child abuse. Under the theory of vicarious liability for employer conduct, the negligence claim against SCH was also dismissed. As to the remaining claim that Farah filed directly against SCH,  we hold that a cause of action for negligent training and supervision of an employee acting within the scope of their employment in making a good faith reporting of suspected child abuse is not a viable claim.

The direct claims for negligent training and supervision against SCH for vicarious liability are mutually exclusive. Thus, where, as here, Tayntor is acting within the scope of her employment, Farah is limited to a claim for vicarious liability and he may not bring direct claims for negligence against SCH. Such holding is consistent with case law.

We turn first to the relevant statutes concerning immunity. RCW 26.44.030(1)(a) provides that "[w]hen any . . . practitioner . . . has reasonable cause to believe that a child has suffered abuse . . . , he or she shall report such incident" to the department. See also RCW 26.44.020(22) (definition of practitioner). RCW 26.44.060(1)(a) provides that "any person participating in good faith in the making of a [child abuse] report pursuant to this chapter . . . shall in so doing be immune from any civil or criminal liability arising out of such reporting[.]"

Anderson v. Soap Lake School District, involved various claims, including

negligent training and supervision and vicarious liability, against a school district after a student died in a car collision after leaving her high school coach's house intoxicated. 191 Wn.2d 343, 348, 423 P.3d 197 (2018). The Court focused on whether the coach was acting within their scope of employment because "an action based on negligent training and supervision 'is applicable *only* when the [employee] is acting outside the scope of his employment.' " Anderson, 191 Wn.2d at 361 (alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 317 cmt. a (AM. LAW INST. 1965)). Otherwise, where an employee is acting within the scope of employment, the employer is " 'vicariously liable under the principles of the law of Agency' instead." Anderson, 191 Wn.2d at 361 (quoting RESTATEMENT § 317 cmt. a). Because the coach was acting outside of his scope of employment, vicarious liability did not apply. Anderson, 191 Wn.2d at 363. And further, because there was no evidence the District knew the coach would be serving alcohol to students off campus, the foreseeability element of a claim for negligent supervision failed. Anderson, 191 Wn.2d at 367.

In this case, Farah conceded that Tayntor was acting within the scope of her employment. Accordingly, Farah's claim for negligent supervision and training should be addressed under vicarious liability. The trial court dismissed all claims against SCH under a theory of vicarious liability because Tayntor's reporting actions are immuned under RCW 26.44.060.

Washington courts have recognized that where an agent is immune from chapter 26.44 RCW for good-faith reporting, the principal is also immune for the same conduct. Miles v. Child Protective Servs. Dep't, 102 Wn. App. 142, 159, 6

P.3d 112 (2000); <u>Yuille v. State Dep't of Soc. & Health Servs.</u>, 111 Wn. App. 527, 533-35, 45 P.3d 1107 (2002). In <u>Miles</u>, Dr. Feldman, after conducting his own evaluation and relying on the reports of multiple other health care providers, opined the children were subjected to Munchausen's Syndrome By Proxy (MSBP), reported possible child abuse to CPS, and recommended the children be placed outside the family home. 102 Wn. App. at 147. The parents sued Dr. Feldman and the hospital for negligence. <u>Miles</u>, 102 Wn. App. at 158. The court concluded "[a]ssuming without holding that Dr. Feldman negligently diagnosed MSBP, he and [the hospital] are immune from liability as a matter of law" because "[n]o reasonable person could find that Dr. Feldman or any of the others acted without good faith; whether mistaken or not, they believed they were acting in the best interests of the children" <u>Miles</u>, 102 Wn. App. at 159.[1]

In <u>Yuille</u> a physician concluded that Yuille, a prospective adoptive parent, probably suffered from MSBP. 111 Wn. App. at 531. Yuille sued the hospital and physician for a variety of tort claims, including negligence. 111 Wn. App. at 532. The trial court concluded that the hospital and physician were entitled to statutory immunity under RCW 26.44.060(1)(a). <u>Yuille</u>, 111 Wn. App. at 532. The same analysis governs the present case. Farah conceded that Tayntor was acting in good faith. Thus, her and her employer's actions leading up to and in making the report are immune, under RCW 26.44.060(1)(a).

Farah asserts that the negligent training and supervision is distinguishable because it is a direct claim focused on SCH's conduct for failing to train Tayntor,

---

[1] Emphasis omitted.

which "resulted in Ms. Tayntor's misperceiving [Farah's] action and causing him harm." But we rejected a similar argument in Yuille, where the parents argued the hospital and physician should not be immune because they did not properly verify whether any abuse occurred. 111 Wn. App. at 533  And we emphasized in Yuille that RCW 26.44.060(1)(a) does not require that "the information giving rise to the suspicion of abuse be investigated or verified before it is reported." 111 Wn. App at 533. That is because the duty to investigate lies with the authorities, not the individual making the report. So the failure to verify or investigate does not rule out immunity. Yuille, 111 Wn. App at 533.

Granting immunity to individuals and their employers is to encourage those in the position to suspect child abuse to report it. The legislature emphasized that the prevention of child abuse is of "the highest priority, and all instances of child abuse must be reported to the proper authorities who should diligently and expeditiously take appropriate action." C.J.C. v. Corp. of Catholic Bishop of Yakima, 138 Wn.2d 699, 727, 985 P.2d 262 (1999). "When determining whether a child and a parent . . . should be separated during or immediately following an investigation of alleged child abuse or neglect, the safety of the child shall be the [department of children, youth and families'] paramount concern." RCW 26.44.010.[2]

The law encourages reporting also by holding certain professionals criminally liable if they fail to notify the proper authorities when there is reason to suspect child abuse. RCW 26.44.030; RCW 26.44.080. This emphasis on

---

[2] Emphasis added.

7

mandatory reporting is balanced by corresponding protection for those who report. "Any person who makes a good faith report of suspected abuse is absolutely immune from civil or criminal liability arising from the reporting," under RCW 26.44.060(1)(a). C.J.C., 138 Wn.2d at 727.

In conclusion, Tayntor's good faith reporting was within the scope of her employment, which therefore immunized her employer SCH from claims of negligent training and supervision.

We reverse the trial court's denial to dismiss the negligent training and supervision claim against SCH.

Bowman, J.

WE CONCUR:

Birk, J.

Mann, J.